Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAROLD LITWIN, <br><br> Plaintiff, <br><br> vs. <br><br> BLACKHAWK NETWORK HOLDINGS, INC., TALBOTT ROCHE, WILLIAM Y. TAUSCHER, ANIL D. AGGARWAL, RICHARD H. BARD, THOMAS BARNDS, STEVEN A. BURD, ROBERT L. EDWARDS, MOHAN GYANI, PAUL HAZEN, ROBERT B. HENSKE, ARUN SARIN, and JANE J. THOMPSON, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> JURY TRIAL DEMANDED |

Plaintiff Harold Litwin ("Plaintiff"), by and through his undersigned counsel, alleges the following upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge, as follows:

**NATURE OF THE ACTION**

1.      Plaintiff brings this action against Blackhawk Network Holdings, Inc. ("Blackhawk" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Blackhawk will be acquired by Silver Lake Partners ("Silver Lake") and P2 Capital Partners, LLC ("P2 Capital Partners," and together with Silver Lake, the "Sponsors"), through BHN Holdings, Inc. ("Parent") and Parent's wholly-owned subsidiary, BHN Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.      On January 16, 2018, Blackhawk issued a press release announcing it had entered into an Agreement and Plan of Merger (the "Merger Agreement") to sell Blackhawk to the Sponsors for $45.25 in cash per Blackhawk common share (the "Merger Consideration").   The Proposed Transaction is valued at approximately $3.5 billion.

3.      On March 2, 2018, Blackhawk filed a Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Blackhawk stockholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning, among other things: (i) Blackhawk insiders' potential conflicts of interest; (ii) the background process leading to the Proposed Transaction; (iii) Blackhawk's financial projections, relied upon by Blackhawk's financial advisor Sandler O'Neill & Partners, L.P. ("Sandler O'Neill"); and (iv) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Sandler O'Neill.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Blackhawk stockholders need such material information in order to cast a fully-informed vote or to make a fully-informed decision to seek appraisal in connection with the Proposed Transaction.

4.     In short, unless remedied, Blackhawk's public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6.     The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  Blackhawk is incorporated in Delaware and is headquartered in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## THE PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Blackhawk.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

9.     Defendant Blackhawk is a Delaware corporation with its principal executive offices located at 6220 Stoneridge Mall Road, Pleasanton, California 94588.   Blackhawk is a global financial technology company that enables the management of stored value products, promotions and rewards programs in retail, ecommerce, financial services and mobile wallets.   Blackhawk's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "HAWK."

10.     Defendant Talbott Roche ("Roche") has been President of the Company since November 2010, and Chief Executive Officer ("CEO") and a director of the Company since February 2016.

11.     Defendant William Y. Tauscher ("Tauscher") has been Executive Chairman of the Company since July 2016 and previously served as CEO of the Company from August 2010 to February 2016.   Defendant Tauscher has been a director of the Company since August 2007 and Chairman of the Board since August 2009.

12.     Defendant Anil D. Aggarwal ("Aggarwal") has been a director of the Company since February 2016.

13.     Defendant Richard H. Bard ("Bard") has been a director of the Company since October 2014.

14.     Defendant Thomas Barnds ("Barnds") has been a director of the Company since February 2017.

15.     Defendant Steven A. Burd ("Burd") has been a director of the Company since August 2007.

16.     Defendant Robert L. Edwards ("Edwards") has been a director of the Company since July 2008.

17.     Defendant Mohan Gyani ("Gyani") has been a director of the Company since August 2007.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

18.     Defendant Paul Hazen ("Hazen") has been a director of the Company since August 2007.

19.     Defendant Robert B. Henske ("Henske") has been a director of the Company since April 2017.

20.     Defendant Arun Sarin ("Sarin") has been a director of the Company since August 2009.

21.     Defendant Jane J. Thompson ("Thompson") has been a director of the Company since October 2014.

22.     Defendants identified in paragraphs 10-21 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

23.     Silver Lake Partners is a private equity firm with a particular focus on private technology investing.  Silver Lake Partners has approximately $39 billion in combined assets under management and committed capital.

24.     P2 Capital Partners is an investment firm based in New York.  Its limited partners include public pension funds, corporate pension funds, endowments, foundations, insurance companies and high net worth investors.

25.     Parent is a newly formed Delaware corporation and an affiliate of Silver Lake Partners V, L.P.

26.     Merger Sub is a Delaware corporation and a wholly-owned subsidiary of Parent.

## SUBSTANTIVE ALLEGATIONS

### Company Background

27.     Blackhawk is a prepaid payment network utilizing proprietary technology that offers consumers and businesses prepaid cards in physical and electronic forms, complementary prepaid

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

products, payment services and incentives solutions.  The Company is one of the largest third-party distributors of gift cards in the world based on the value of funds loaded on the cards it distributes. Blackhawk's retail network connects to more than 900 content providers and over 244,000 active retail distribution locations.  The Company also sells physical and electronic gift cards or eGifts to consumers through online distributors, such as Amazon.com and Staples.com, as well as Blackhawk's websites GiftCards.com, GiftCardMall.com, GiftCardLab.com and Cardpool.com.

28.     On October 11, 2017, Blackhawk issued a press release announcing the Company's third quarter of 2017 financial results.  For the quarter, operating revenues were $419.3 million, a 16% increase from the third quarter of 2016.  Adjusted EBITDA totaled $31.0 million, a 17% increase compared to the third quarter of 2016.  Defendant Roche commented on the financial results, stating:

> We saw strong top line growth in our international and incentives businesses.  In addition, U.S. retail transaction dollar volume (TDV) increased 13% related to the launch of Target as a distribution partner, strong growth in digital channels and the rebound from the EMV[(1)] impact on open loop products in 2016.  Post-EMV open loop sales are on forecast and we expect to finish the year as originally planned. Volume from the Target account continues to ramp and we're currently rolling out larger, upgraded fixtures at 1,800 Target stores in time for the holiday season.  We also remain focused on margin expansion initiatives and are forecasting Adjusted EBITDA margin expansion of approximately 60 to 100 basis points for full year 2017.

29.     Over the next few months, Blackhawk announced a number of business developments.  For example, on November 2, 2017, the Company announced that it renewed its long-term contract with The Kroger Co. to provide in-store and digital gift card services.  In connection with the announcement, defendant Roche stated, "[w]e are excited to build on our long-standing relationship with Kroger and work together to expand gift card products and solutions through both physical and digital channels."

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

30.     On November 14, 2017, the Company announced that it expanded its partnership with eBay to provide eBay with end-to-end business-to-business gift card services.  Commenting on the partnership expansion, David Tate, senior vice president of Blackhawk, stated:

> [W]e are delivering significant value by helping to grow and manage [eBay's] B2B gift card program, while enabling eBay to become more competitive in this space. . . . We are leveraging the synergies and technology across both Blackhawk and CashStar to offer a complete, comprehensive gift card solution for distribution directly to business buyers.

31.     On December 15, 2017, Blackhawk issued a press release announcing it had entered into an agreement to sell its Grass Roots Meetings & Events business to BCD Meetings and Events for approximately $30.3 million.

**The Sale Process**

32.     From mid-2017 through October 11, 2017, the Company engaged in discussions with the Sponsors regarding a potential minority private investment in the Company's equity. Blackhawk entered into a confidentiality agreement with Silver Lake Partners on May 22, 2017 and with P2 Capital Partners on May 25, 2017.

33.     On October 20, 2017, the Sponsors submitted an indication of interest to acquire the Company at a range of $47.00 - $49.00 per share in cash.

34.     At a November 21, 2017 Board meeting, the Board and the Company's senior management discussed the status of Blackhawk's 2018 fiscal year plan.  Sandler O'Neill discussed with the Board its preliminary financial analysis and a forecasted range of estimated fiscal year 2018 Adjusted EBITDA of $240 million to $280 million.

35.     On December 4, 2017, the Board met to review the Company's preliminary fiscal year 2018 plan prepared by Blackhawk's management.  Sandler O'Neill also provided an updated preliminary financial analysis, reflecting management's revised fiscal year 2018 Adjusted EBITDA estimate of $260 million.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

36.     On December 11, 2017, the Sponsors submitted an indication of interest to acquire the Company at a range of $44.00 - $45.00 per share in cash.

37.     On January 4, 2018, a financial sponsor referred to in the Proxy Statement as "Party A" contacted defendant Roche to indicate Party A's interest in pursuing discussions regarding an acquisition of the Company.

38.     At a January 11, 2018 special Board meeting, Sandler O'Neill discussed its financial analysis, which was based, at the Company's direction, on a further revised 2018 fiscal year plan indicating an Adjusted EBITDA range of $240 million to $250 million.  Following discussion, the Board decided against pursuing Party A's contact.

39.      Over the next few days, the Sponsors, Blackhawk and their respective advisors negotiated the terms of the transaction at a price of $45.25 per share, and finalized the Merger Agreement, which included a go-shop period.

40.     On January 14, 2018, the Board held a special meeting at which Sandler O'Neill rendered its fairness opinion and the Board approved the Merger Agreement.

41.     The next day, the parties executed the Merger Agreement and the 25-day go-shop period commenced.

42.     During the go-shop period, Party A contacted Blackhawk to indicate its interest in engaging with the Company.  Party A executed a confidentiality agreement with the Company on January 17, 2018, yet the Proxy Statement fails to disclose whether Party A's confidentiality agreement is still in effect and currently precludes Party A from submitting a topping bid for the Company.

**The Proposed Transaction**

43.     On January 26, 2018, Blackhawk issued a press release announcing the Proposed Transaction, which stated, in relevant part:

- 8 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Pleasanton, Calif. – Jan. 16, 2018 – Blackhawk Network Holdings, Inc. (NASDAQ: HAWK) ("Blackhawk"), a global financial technology company and a leader in prepaid gift, reward and incentive technologies and solutions, today announced that Silver Lake, the global leader in technology investing, and P2 Capital Partners have agreed to acquire Blackhawk in an all-cash transaction for a total consideration of approximately $3.5 billion, which includes Blackhawk's debt. Under the terms of the agreement, Blackhawk stockholders will receive $45.25 per share in cash upon closing of the transaction, representing a premium of 24.0% over Blackhawk's closing share price of $36.50 on January 12, 2018 and a premium of 29.3% over the average closing share price during the 90 calendar days ended January 12, 2018.

Blackhawk operates a leading physical and digital gift card and prepaid payments network with global scale, connecting more than 1,000 brands to over 244,000 retail distribution locations and online channels. Upon completion of the transaction Blackhawk will operate as a private company under the leadership of the current management team. Blackhawk's Board of Directors has unanimously approved the definitive merger agreement and recommends that stockholders vote in favor of the transaction. The definitive agreement has fully committed debt and equity financing, including an approximately $1.7 billion equity commitment from Silver Lake. P2 Capital Partners, which beneficially owns approximately 5.4% of Blackhawk's outstanding common stock, has committed to vote in favor of the proposed transaction.

\* \* \*

Blackhawk's outstanding network of partners and proprietary technology creates a unique franchise in the payments industry with a proven ability to innovate in both the physical and digital segments," said Mike Bingle, Managing Partner at Silver Lake. "We are excited to work with Blackhawk's world-class management team and our new partners at P2 Capital Partners to strengthen the company's position in large and growing parts of the financial technology ecosystem."

"This transaction represents the best way to maximize value for all stockholders," said Alex Silver, Partner at P2 Capital Partners. "We have been an investor and supporter of Blackhawk's strategy and management for several years, and we look forward to working with Silver Lake and Blackhawk management to drive the company's next stage of growth."

The transaction, which is expected to close mid-2018, is subject to customary closing conditions, including receipt of stockholder and regulatory approvals. The definitive merger agreement permits Blackhawk's Board of Directors and its advisors to solicit, receive, evaluate and enter into negotiations with respect to alternative proposals through February 9, 2018. There can be no assurance that this process will result in a superior proposal, and Blackhawk's Board of Directors does not intend to disclose developments with respect to the solicitation process unless and until the Board makes a determination requiring further disclosure.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**Insiders' Interests in the Proposed Transaction**

44.     Blackhawk insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.   The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Blackhawk.

45.     Notably, it appears that certain members of Company management have secured positions for themselves upon completion of the Proposed Transaction.   According to the January 16, 2018 press release announcing the Proposed Transaction, Mike Bingle, Managing Partner at Silver Lake, stated, "[w]e are excited to work with Blackhawk's world-class management team and our new partners at P2 Capital Partners to strengthen the company's position in large and growing parts of the financial technology ecosystem."   Alex Silver, Partner at P2 Capital Partners, similarly noted, "we look forward to working with Silver Lake and Blackhawk management to drive the company's next stage of growth."

46.     Further, Blackhawk insiders stand to reap substantial financial benefits for securing the deal with the Sponsors.   Each outstanding Company option, stock appreciation right, restricted share award and restricted stock unit granted to an employee on or after June 1, 2016 held by the Company's directors and executive officers will be converted into the right to receive cash payments.

47.     Moreover, if they are terminated in connection with the Proposed Transaction, Blackhawk's named executive officers stand to receive substantial cash severance payments, as set forth in the following table:

| Name | Cash ($) | Equity ($) | Perquisites/ Benefits ($) | Total ($) |
|---|---|---|---|---|
| *Named Executive Officers* | | | | |
| Talbott Roche | 3,294,247 | 8,099,669 | 38,275 | 11,432,191 |
| William Y. Tauscher | 2,401,260 | 2,679,837 | 26,705 | 5,107,802 |
| Charles O. Garner | 1,494,922 | 4,525,000 | 38,681 | 6,058,603 |

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

| | | | |
|---|---|---|---|
| David C. Tate | 1,187,555 | 2,218,321 | 38,681 | 3,444,557 |
| Kirsten Richesson | 699,855 | 1,396,914 | 32,450 | 2,129,219 |
| Sachin Dhawan | 1,187,555 | 3,859,125 | 12,806 | 5,059,486 |

**The Proxy Statement Contains Material Misstatements or Omissions**

48.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Blackhawk's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction or seek appraisal.

49.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Blackhawk insiders' potential conflicts of interest; (ii) the background process leading to the Proposed Transaction; (iii) Blackhawk's financial projections, relied upon by Blackhawk's financial advisor Sandler O'Neill; and (iv) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Sandler O'Neill.  Accordingly, Blackhawk stockholders are being asked to vote in favor of the Proposed Transaction or seek appraisal without all material information at their disposal.

***Material Omissions Concerning Blackhawk Insiders' Potential Conflicts of Interest***

50.     The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Blackhawk insiders.

51.     According to the Company's January 16, 2018 press release announcing entry into the Merger Agreement, Mike Bingle, Managing Partner at Silver Lake, stated, ***"[w]e are excited to work with Blackhawk's world-class management team*** and our new partners at P2 Capital Partners to strengthen the company's position in large and growing parts of the financial technology ecosystem."  Emphasis added.  Similarly, Alex Silver, Partner at P2 Capital Partners, commented, "*we look forward to working with Silver Lake **and Blackhawk management*** to drive the company's

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

next stage of growth." Emphasis added. Yet, the Proxy Statement fails to disclose whether any of Blackhawk's officers or directors have secured employment after completion of the Proposed Transaction. The Proxy Statement further fails to disclose the details of any employment related discussions and negotiations that occurred between the Sponsors and Blackhawk executive officers, including who participated in all such communications, when they occurred, and their content, as well as whether any of the Sponsors' prior proposals or indications of interest mentioned management retention.

52. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

53. The omission of this information renders the statements in the "Background of the Merger" and "Interests of Blackhawk's Directors and Executive Officers in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background Process of the Proposed Transaction***

54. The Proxy Statement also fails to disclose material information relating to the sale process leading up to the Proposed Transaction.

55. The Proxy Statement fails to disclose whether the confidentiality agreement the Company executed with Party A on January 17, 2018 includes a standstill provision that is still in effect and/or contains a "don't-ask-don't-waive" ("DADW") standstill provision that is presently precluding Party A from making a topping bid for the Company.

56. The disclosure of the terms of Party A's confidentiality agreement is crucial to Blackhawk stockholders being fully informed of whether their fiduciaries have put in place

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

restrictive devices to foreclose a topping bid for the Company.  This information takes on

heightened importance considering Party A contacted defendant Roche indicating its interest in an

acquisition of the Company nearly two weeks prior to the date Blackhawk entered into the Merger

Agreement.  Yet, the Board denied Party A the opportunity to pursue such discussions until after

Blackhawk executed the Merger Agreement with the Sponsors.

57.    The omission of this information renders the statements in the "Background of the

Merger" section of the Proxy Statement false and/or materially misleading in contravention of the

Exchange Act.

***Material Omissions Concerning Blackhawk's Financial Projections***

58.    The Proxy Statement is materially deficient because it fails to disclose material

information relating to the Company's intrinsic value and prospects going forward.

59.    The Proxy Statement omits material information regarding Blackhawk's

management's financial projections and the financial analyses performed by the Company's

financial advisor Sandler O'Neill.

60.    For example, in connection with Sandler O'Neill's *Discounted Cash Flow Analysis*,

the Proxy Statement states:

> Note: Assumes $815.0 million in net debt as provided by Blackhawk management;
> 2017 Adjusted EBITDA estimate and 2018 estimated Adjusted EBITDA range
> exclude results from Grass Roots Meetings & Events Limited and Cardpool, Inc.;
> assumes fully diluted Blackhawk common stock outstanding of 60.2 million as
> provided by Blackhawk management.

Proxy Statement at 46.  Yet, the Proxy Statement fails to disclose any projections related to the

Grass Roots Meetings & Events Limited and Cardpool, Inc. businesses that were excluded from

Blackhawk management's 2017 Adjusted EBITDA estimate and 2018 estimated Adjusted EBITDA

range.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

61.     Further, the Proxy Statement fails to disclose the line items used to calculate the Company's estimated Adjusted EBITDA, which Blackhawk's management revised three times prior to entering into the Merger Agreement, for each of the November Estimate Range, Preliminary 2018 Plan and the Revised Projections, including, but not limited to: (i) EBITDA; (ii) adjustments for the impact of business units held for sale; (iii) stock based compensation; (iv) acquisitions-related employee compensation expenses; (v) revenue adjustments from purchase accounting; (vi) goodwill and other asset impairment charges; (vii) the change in the fair value of contingent consideration; (viii) the net gain on the transaction to transition Blackhawk's program-managed general-purpose reloadable ("GPR") business to another program manager; (ix) the gain on the sale of Blackhawk's member interest in Visa Europe; and (x) legal and accounting related costs incurred in conjunction with the sale of Grass Roots Meetings & Events Limited.

62.     The omission of this information renders the statements in the "Certain Blackhawk Unaudited Prospective Financial Information" and "Opinion of Blackhawk's Financial Advisor" sections of the Proxy Statement false and materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Sandler O'Neill's Financial Analyses***

63.     The Proxy Statement describes Sandler O'Neill's fairness opinion and the various valuation analyses performed in support of its opinion.   However, the description of Sandler O'Neill's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.   Without this information, as described below, Blackhawk's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Sandler O'Neill's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.  This omitted information, if disclosed, would significantly alter the total mix of information available to Blackhawk's stockholders.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

64.     With respect to Sandler O'Neill's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose (i) the basis for assuming a compound annual growth rate range of 5.00% to 15.00% for Blackhawk's EBITDA from 2018 to 2021; (ii) the basis for applying a range of enterprise value to Adjusted EBITDA multiples of 10.0x to 14.0x; and (iii) quantification of the inputs and the assumptions underlying the discount rate of 11.27%.

65.     With respect to Sandler O'Neill's *Comparable Company Analysis* and *Analysis of Precedent Merger Transactions*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each company and transaction analyzed by Sandler O'Neill.

66.     When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

67.     The omission of this information renders the statements in the "Opinion of Blackhawk's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

68.     The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Blackhawk will be unable to make a fully-informed decision whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act And SEC Rule 14a-9 Promulgated Thereunder**

69.     Plaintiff repeats all previous allegations as if set forth in full.

70.     SEC Rule 14a-9, 17 C.F.R. §240.14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

71.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

72.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.   The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.   The Proxy Statement misrepresented and/or omitted material facts, including material information about the sale process for the Company, potential conflicts of interest faced by Company insiders and the actual intrinsic standalone value of the Company.   The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

73.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or whether to seek appraisal.   In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy Statement and in other information reasonably available to stockholders.

74.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

75.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.   Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

**COUNT II**

**Claims Against the Individual Defendants for**
**Violation of Section 20(a) of the Exchange Act**

76.     Plaintiff repeats all previous allegations as if set forth in full.

77.     The Individual Defendants acted as controlling persons of Blackhawk within the meaning of Section 20(a) of the Exchange Act as alleged herein.   By virtue of their positions as officers or directors of Blackhawk and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

78.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

79.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.   The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.   They were, thus, directly involved in the making of this document.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

80.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

81.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

82.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, against defendants, as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Blackhawk stockholders;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Dated: March 7, 2018

**WEISSLAW LLP**
Joel E. Elkins

By: */s/ Joel E. Elkins*

Joel E. Elkins
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone:  310/208-2800
Facsimile:   310/209-2348
                    -and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY  10036
Telephone: 212/682-3025
Facsimile:  212/682-3010

*Attorneys for Plaintiff*

- 19 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS